CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAY 0 4 2009

JOHN F CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

|  |  |
|---|---|
| ANITA FOMBY, ) | Case No. 5:08cv00049 |
| ) |  |
| Plaintiff ) | REPORT AND |
| v. ) | RECOMMENDATION |
| ) |  |
| MICHAEL J. ASTRUE, ) | By:  Hon. James G. Welsh |
| Commissioner of Social Security, ) | U. S. Magistrate Judge |
| ) |  |
| Defendant ) |  |

The plaintiff, Anita Fomby, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying her claims for a period of disability insurance benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq.*, respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The Commissioner's Answer was filed on October 1, 2008 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered on the following day, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Alleging that the administrative law judge ("ALJ") improperly evaluated both the opinions of her treating physicians and her subjective complaints of pain, the plaintiff seeks reversal of the Commissioner's final decision. Each party has moved for summary judgment; no written request was made for oral argument,[1] and the case is now before the undersigned for a report and recommended disposition.

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the defendant's summary judgment motion of be denied, that the Commissioner's final decision denying plaintiff's applications be reversed, and the case be remanded for the limited purpose of calculating and paying benefits.

I.  **Standard of Review**

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB or to SSI. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but

---

[1] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

2

may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II. Administrative History

The record shows that the plaintiff protectively filed her applications on July 25, 2005, alleging a disability beginning December 31, 2004 due to "trigeminal neuralgia and depression." (R.17,55-57,59,65-89,262-276.) Her claims were denied both initially and on reconsideration, and an administrative hearing on her applications was held on January 9, 2007 before an ALJ. (R.17,27-48,462-475,503.) The plaintiff was present, testified, and was represented by counsel. (R.17,53-54,503-539.) Robert Jackson, a vocational witness, was also present and testified. (R.17,531-538.)

Utilizing the agency's standard sequential evaluation process, the plaintiff's claims were denied by written administrative decision dated January 26, 2007. (R.17-26.) *Inter alia*, the ALJ made the following findings: the plaintiff's *insured status* expires September 30, 2009; she had

3

severe impairments, including trigeminal neuralgia (a neuropathic disorder that causes acute facial pain) and headaches; her "medically determinable depressive disorder [was] a non-severe impairment;" and she possessed the residual functional capacity to meet the physical and mental demands of her past relevant work. (R.19-26.)

After the ALJ's issuance of his adverse decision, the plaintiff made a timely request for Appeals Council review and submitted additional medical evidence in support of her applications. (R.6,10,13-14,477-502.) Her request was denied without reference to the updated medical evidence (R.6-10), and the decision of the ALJ now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

### III. Facts and Analysis

The record in this case shows that the plaintiff was born in 1969 and was thirty-seven years of age [2] at the time of the administrative hearing. (R.56,59,65,67,69,508-509.) She has a high school education (R.78,87,509), and her past relevant jobs included production inspector, warehouse worker, newspaper clerk, cashier, packer, assistant store manager, and dressing room clerk. (R.73-74,82,90,163-164,512-514,523-525,532-535.)

---

[2] At this age the plaintiff is classified as a "*younger person*," and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.920(c).

4

The plaintiff's medical records show that she was repeatedly seen and treated between January 2004 and May 2007 for multiple episodes of acute left-sided facial headaches. (R.186-201, 202-239,257-261,268-272,300-307,310-311,312-313,316-319,323-329,331-335,371-381,387-388, 392-395,403-461,477-502.) Her condition was diagnosed as trigeminal neuralgia [3] with attendant depression, difficulty sleeping, episodic nausea, and occasional vertigo. (Id.) Since this diagnosis was made, the plaintiff's condition has been pharmacologically treated with limited improvement, principally with Percocet [4] and Cymbalta..,[5] (Id.)

After seeing and treating the plaintiff's chronic pain and depressive condition for four months, Dr. Darlinda Grice [6] (Augusta Pain Management) reported to the Virginia Department of Social Services in February 2006 that the plaintiff was not then medically able to work and would not be functionally able to work for at least ninety days. (R.400-401,) As part of this clinical

---

[3] Trigeminal neuralgia (also called (*tic douloureux*), is a chronic pain condition that causes extreme, sporadic, sudden burning or shock-like face pain. The pain seldom lasts more than a few seconds or a minute or two per episode. The intensity of pain can be physically and mentally incapacitating. The pain is typically felt on one side of the jaw or cheek, and episodes can last for days, weeks, or months at a time and then disappear for months or years. In the days before an episode begins, some patients may experience a tingling or numbing sensation or a somewhat constant and aching pain. The attacks often worsen over time, with fewer and shorter pain-free periods before they recur. The intense flashes of pain can be triggered by vibration or contact with the cheek (such as when shaving, washing the face, or applying makeup), brushing teeth, eating, drinking, talking, or being exposed to the wind. *Trigeminal Neuralgia Fact Sheet*, Nat'l. Institute of Neurological Disorders and Stroke,, May 2006 (NIH publication No. 06-5116).

[4] Percocet (acetaminophen; oxycodone) is a compound painkiller used to treat moderately severe to severe acute (short-term) pain.

[5] Cymbalta (Duloxetine) is an antidepressant used to treat depression and also used to treat chronic pain caused by complications of diabetes or pain caused by conditions such as fibromyalgia.

[6] Dr. Grice is a neurologist. (R.393.)

5

assessment, Dr. Grice additionally reported that in combination the plaintiff's medical condition significantly restricted her cognitive, driving, visual, bending, stooping and reaching abilities. (*Id.*)

Six months later Dr. Grice once again reported that the plaintiff's remained functionally unable to work and that in combination her medical condition and medication regime significantly restricted multiple functional abilities. ()R.4360-461.) On the same date, August 8, 2006, Dr. Krista Craig (North Augusta Family Physicians) rendered essentially the same assessment of the plaintiff's functional limitations and work inability in her separate report to the Virginia Department of Social Services. (R.392-393.)

The medical record in this case demonstrates that the plaintiff repeatedly sought treatment of a stabbing unilateral facial pain, the classic clinical presentation of idiopathic trigeminal neuralgia.[7] Likewise, it demonstrates a significant longitudinal medical history, including multiple emergency room visits, of treatment of her condition, and it documents her prescription use of a potent pain-relieving opioid which could be expected to cause significant side-effects. *See Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996).

Thus, the plaintiff has fulfilled her burden of producing objective evidence of a medical impairment which both *could* be reasonably expected to produce the pain she alleges and which *actually* causes her alleged pain. (*Id.*) Although the ALJ concluded that the plaintiff's trigeminal

---

[7] The cause of trigeminal neuralgia "is still unknown," and any objective abnormalities disclosed in a neurologic examination would exclude a diagnosis of the condition. *See* footnote 3; *see also* R.329.

neuralgia was a severe condition which *could* produce her alleged pain, he rejected her evidence of *actual* disabling pain. (R.25.) As justification for this rejection, the ALJ cited four ostensible evidentiary bases: her daily activities;[8] what he characterized as an inconsistent longitudinal record of conservative treatment; what he described as the "seemed skeptic[ism]" of an emergency room physician about the plaintiff's facial pain complaints on one occasion in August 2005; and the "slight weight" he assigned to the treating physician opinions of Dr. Grice and Dr. Craig. (R.24-25.)

Manifestly, an ALJ is not required to accept either the plaintiff's subjective testimony or the opinions of her treating physicians at face value; however, the decisional justifications upon which he relies to discount the plaintiff's evidence must, at a minimum, constitutes substantial evidence in support of the final decision to deny an individual's applications. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *King v. Califano*, 599 F.2$^d$ 597, 599 (4th Cir. 1979). In the instant case, the decisional bases upon which the ALJ relies simply does not constitute the requisite substantial evidence, either separately or in combination.

A.

Although the agency's regulations allow an ALJ to consider whether an individual's daily activities are inconsistent with his or her stated inability to work, a number of courts have questioned whether an individual's ability to do housework really evidences an ability to work outside the home on a regular and sustained basis. *E.g., Mendez v. Barnhart*, 439 F.3$^d$ 360, 362-363

---

[8] Both in her Daily Activities Questionnaire responses and in her testimony, the plaintiff identified her daily activities as limited to the household duties of a single parent caring for four children, between the ages of seven and fifteen, with significant assistance provided by her older children. (R.121-126, 509, 518-519.)

7

(7th Cir. 2006). *See Totten v. Califano*, 624 F.2d 10, 11-12 (4th Cir. 1980) ("an individual does not have to be totally helpless or bedridden in order to be found disabled"); *Broadbent v. Harris*, 698 F.2d 407, 410 (10th Cir. 1983) (without more evidence, activities which do not involve prolonged physical activity do not establish that a claimant is able to engage in substantial gainful activity); *Ludden v. Bowen*, 888 F.2d 1246, 1248 (an individual "need not be completely bedridden or unable to perform any household chores to be considered disabled") (quoting *Easter v. Bowen*, 867 F.2d 1128, 1130) (8th Cir. 1989); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain") *See also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (if an individual "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain")

In the plaintiff's case, there is nothing in the record to demonstrate that the plaintiff's daily activities involved significant physical functions or other activity from which one could reasonably conclude that she maintained a functional ability to perform activities which were inconsistent with the assessments of her treating physicians. The ability of a single mother to care for her four children with the assistance of the older children simply does not qualify as the ability to do substantial gainful work activity.

**B.**

8

Similarly, the plaintiff's record of treatment does not constitute a cognizable basis to conclude that she did not have the degree of pain reported both by her and by her treating physicians. The ALJ described her treatment since January 2005 as "inconsistent" and "conservative." The medical record, however, shows that the plaintiff sought emergency room treatment for acute facial pain complaints on eleven occasions between February and December 2005 (R.317-319,323-335,202-239), saw her family physician eight other times for facial pain and related depression during 2005 and 2006 (R.268-272,294-295,311), sought treatment for depressive symptoms twenty times between November 2006 and June 2007 (R.481-502); and was regularly seen by Dr. Grice, a neurologist and pain management specialist, at intervals of approximately every eight-weeks between September 2005 and May 2007 for pharmacological management of her facial pain and associated depressive symptomalogy (R.300-307,375-381,403-459,477-480). In addition, the medical record contains no evidence or suggestion of any medically indicated treatment that would be more efficacious than that followed by Dr. Grice.

## C.

The ALJ's reliance on his vague and indefinite impression that an emergency room physician in August 2005 "seemed skeptical" of the plaintiff's complaint of persistent facial pain similarly fails to constitute substantial evidence. If he was unsure of the physician's assessment, it was his responsibility to develop an adequate record on the issue. *See Cook v. Heckler*, 783 F.2$^d$ 1168, 1173 (4th Cir. 1986) (an ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record"). A mere conclusory observation which does not fully explain and resolve evidentiary conflicts in the evidence or which do not provide credible factual

9

support for a conclusion "is not supported by substantial evidence." *Boston v. Barnhart*, 332 F.Supp. 2d 879, 890 (D.Md. 2004).

### D.

The record in this case establishes without question (and the ALJ acknowledged) that Dr. Grist and Dr. Craig each qualifies as a "treating physician" for purposes of 20 C.F.R. § 404.1527.[9] Nevertheless, the ALJ elected to give their opinions "little weight" and give "great weight" to the inherently speculative medical assessments of non-examining, non-treating, state agency reviewers. (R.25.) On careful review, the record fails to support these evaluations.

As the Fourth Circuit held in *Kyle v. Cohen*, 449 F. 2nd 489, 492 (4th Cir. 1971), evidence from a non-examining or non-treating physician can be used and relied upon only if it is consistent with the record. *Accord Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984) ("the report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record"). In other words, such evidence "cannot, by itself, serve as substantial evidence supporting the denial of disability benefits when it is contradicted by all of the other evidence in the record. *Martin v. Secretary*, 492 F.2d 905, 908 (4th Cir. 1974); *accord Hall v. Harris*, 658 F.2d 260, 266 (4th Cir. 1981).

---

[9] Under 20 C.F.R. § 404.1527(d)(1) and (2), it is provided that greater weight should be accorded to opinions from physicians who have actually examined and treated a claimant.

10

An ALJ is not free simply to ignore a treating physician's opinions and medical conclusions; instead, he is obligated to evaluate all the evidence in the record to determine the extent to which the treating physician's legal conclusion is supported by the record. S.S.R. 96-5p. *Morgan v. Barnhart*, 142 Fed. Appx. 716, 722 (4th Cir 2005). He is generally obligated to give "more weight to opinions from ... treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of ... medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings or from reports of individual examinations." See 20 C.F.R. § 404.1527 (d)(2).

In making this evaluation, the ALJ is obligated to consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d), 416.927(d). In short, a treating physician's opinion cannot be rejected absent "persuasive contrary evidence," *Mastro*, 270 F.3d at 178, and the ALJ must explain why he discounted a physician's opinion, 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2) ("We will always give good reasons ... for the weight we give your treating source's opinion."); SSR 96-2p.

At the time of the state agency physician reviews upon which the ALJ chose to rely, the plaintiff's medical record was far from complete. Unlike Dr. Grice, neither of these reviewers was a medical specialist. Similarly, at the time of their reviews, neither of these reviewers had the benefit of a significant longitudinal record of treatment. Moreover, neither reviewer had the benefit

11

of seeing and examining the plaintiff in order to make a good professional assessment of the precise nature and severity of the plaintiff's condition. In contrast, unlike the state agency physicians, Drs. Grice and Craig each brought to this case a unique perspective on the medical evidence and as to the nature of the plaintiff's condition which could not be obtained from a limited records review. *See* SSR 9602p. Under the facts of this case, therefore, the ALJ was obligated to give Dr. Grice's and Dr. Craig's opinions more decisional weight, and his failure to do so constitutes reversible error.

## IV. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is not supported by substantial evidence;

2. The medical record demonstrates that the plaintiff suffers from idiopathic trigeminal neuralgia;

3. The plaintiff's daily activities do not constitute substantial evidence of her ability to engage in substantial gainful employment on a regular and sustained basis;

4. The plaintiff's medical record evidences a decisionally significant longitudinal history of treatment for persistent facial pain associated with trigeminal neuralgia;

5. The Commissioner final decision failed to give proper consideration and weight to Dr. Grice's medical opinions;

6. The Commissioner's final decision failed to consider properly the nature and severity of the plaintiff's trigeminal neuralgia and associated medical and emotional problems;

7. Substantial medical and activities evidence does not exist to support the Commissioner's findings concerning the plaintiff's symptoms and functional limitations;

8. Substantial evidence does not exist to support the Commissioner's finding that through the decision date the plaintiff was not disabled within the meaning of the Act;

9. Substantial evidence does not exist to support the Commissioner's finding that through the decision date the plaintiff retained the residual function capacity to perform her past relevant work;

10. The plaintiff has met her burden of proving disability as alleged in her applications; and

11. The final decision of the Commissioner should be reversed.

## V. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered REVERSING The final decision of the Commissioner, GRANTING JUDGMENT to the plaintiff, DENYING the defendant's motion for summary judgment, and REMANDING this case solely for the purpose of calculating and paying benefits.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VI. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 4th day of May 2009.

/s/ *James G. Welsh*
United States Magistrate Judge